**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

MIGUEL GARCIA,

Debtor.

**FOR PUBLICATION**

Case No. 18-10229 (MG)

Chapter 7

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO LIFT THE AUTOMATIC STAY WITH RESPECT TO PROPERTY LOCATED AT 633 WEST 185th STREET, NEW YORK, NY**

*A P P E A R A N C E S :*

KNUCKELS, KOMOSINSKI & MANFRO LLP
*Attorneys for Rushmore Loan Management Services*
565 Taxter Road, Suite 590
Elmsford, NY  10523
By:     Nicole M. Massi, Esq.

LAW OFFICES OF JJAIS A. FORDE, PLLC
*Attorneys for Debtor Miguel Garcia*
89-31 161st Street, Ste 306
Jamaica, NY 11432-6134
By:     Jjais A. Forde, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

This case presents an example of the sloppiness too often seen by the Court by a debtor's counsel that filed a chapter 7 case *and* by the loan servicer's counsel that filed a motion to lift the automatic stay to permit foreclosure on one of a debtor's properties.  On January 31, 2018, counsel for Miguel Garcia ("Debtor") filed a chapter 7 petition without schedules.  (ECF Doc. # 1.)  Neither the Debtor nor his counsel appeared at the 341 meeting of creditors scheduled for February 27, 2018.  On March 8, 2018, the U.S. Trustee filed a motion to dismiss, or to extend the time to object to the Debtor's discharge, because of the failure to file schedules or appear for the 341 meeting.  (ECF Doc. # 9.)  A hearing on that motion was scheduled to be heard on May 8, 2018, and was resolved without dismissal of the case.

On March 18, 2018, no doubt in response to the U.S. Trustee's motion to dismiss, the Debtor's counsel filed the missing schedules. (ECF Doc. # 12.) Schedule A/B lists the Debtor's ownership of property located at 633 West 185th Street, New York, NY 10033 (the "Property"). (*Id.* at 3.) But a review of those schedules shows that failing to timely file schedules may create additional difficulties for a debtor. The Schedules included a Statement of Intention to retain the Property and "Enter Loss Mitigation to Secure Loan Modification." (*Id.* at 29.) This statement of intention to retain the Property is untimely. Section 521(a)(2)(A) requires that "if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—(A) within 30 days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, [the debtor must] file with the clerk a statement of his intention with respect to the retention or surrender of such property . . . ." 11 U.S.C. § 521(a)(2)(A). The issue of consequences of an untimely statement of intention is not currently before the Court.

On April 5, 2018, counsel for Rushmore Loan Management Services ("Rushmore"), as servicer for U.S. Bank National Association ("U.S. Bank"), as Trustee for the RMAC Trust Series 2016-CTT, alleged to be the holder of the note and mortgage on the Debtor's Property filed a motion for relief from the automatic stay (the "Motion" ECF Doc. # 13-1). It is this Motion that is pending and is the subject of this Opinion. The Motion is supported by the Note, Mortgage, and Assignment ("Exhibit A," ECF Doc. # 13-2), a Declaration by Gloria Rocha, a Vice President at Rushmore ("Exhibit B," or the "Rocha Declaration," ECF Doc. # 13-3), and a Broker Price Opinion ("BPO," Exhibit C, ECF Doc. # 13-4). The Debtor's counsel did not file any opposition to the Motion, which in light of the Statement of Intention to enter Loss

2

Mitigation seems like a dereliction of duty by counsel. Less than two hours before the hearing on the Motion, Debtor's counsel filed a Loss Mitigation Request.[1]  (ECF Doc. # 14.)

As explained below, the Motion to lift the automatic stay is also defective in failing to provide evidence that Rushmore has standing to foreclose. While the Mortgage includes an assignment of the *mortgage* from Wells Fargo Bank, N.A., the original mortgagee, to U.S. Bank (*see* Ex. A at 34), no assignment, allonge, or delivery of the Note endorsed in blank is shown in any evidence submitted in support of the Motion. Indeed, the Note shows that Wells Fargo Bank, N.A., endorsed the Note in blank. (*Id.* at 4.) No affidavit or declaration, or any document submitted in support of the Motion, establishes that U.S. Bank, on whose behalf Rushmore is acting, holds the original Note endorsed in blank. As explained below, this error by Rushmore's counsel is all too common, as a review of prior decisions of this Court clearly shows.

But even if Rushmore had established its standing, and if the Loss Mitigation Request had not been filed before the hearing, the Court has reservations whether the stay should be lifted now. The record raises questions whether the Debtor has a sufficient equity cushion in the Property to justify denial of the Motion at least for a sufficient period to allow the Debtor time to pursue Loss Mitigation.

For the reasons explained below, the Motion to lift the stay is **DENIED WITHOUT PREJUDICE.**

## I.    BACKGROUND

On January 31, 2018 the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. (ECF Doc. #1.) The Debtor's Schedule A/B lists the current value of the

---

[1] This Court's procedures for a Loss Mitigation Request are set forth in General Order M-451. The effect of filing a Loss Mitigation Request is that a lift stay motion filed before the entry of a Loss Mitigation Order shall be adjourned to date after an order terminating loss mitigation. (*Id.* at VI.,C.3.)

3

Debtor's Property at $1,351,537.00 (ECF Doc. #12 at 3), claiming a homeowner's exemption of $165,550.00 with respect to the Property (*id.* at 9), identifying Wells Fargo Bank, N.A. as holding a mortgage debt on the Property of $926,777.17 (*id.* at 11), and including a Statement of Intention to retain the Property and "Enter Loss Mitigation to Secure Loan Modification" (*id.* at 29). By the Motion, Rushmore seeks to enforce U.S. Bank's right to continue an action to foreclose on the Property, stating that there is cause to lift the automatic stay under 11 U.S.C. 362(d) because adding the homeowner's exemption along with broker fees, Trustee fees, and open real estate taxes, "it is clear that no equity remains in the property." (Mot. ¶ 7.)

Rushmore has not indicated the date on which the Debtor paid his last mortgage payment, but the Rocha Declaration states that the Debtor's pre-petition indebtedness to U.S. Bank was $997,660.68. (Rocha Decl. at 3.) This figure apparently includes $601,584.07 in principal, $340,144.39 in interest, $46,850 in taxes and insurance, and $324.52 in late fees. (*Id.*) Post-petition payment defaults include $4,606.84 payments due on February 1, 2018 and on March 1, 2018. (*Id.* at 3.) As of the date of the Motion, the Debtor owed $997,739.68. (*Id.* at 1.) Rushmore also attached as Exhibit C a BPO by "Asset Val" estimating the fair market value of the Property at $1,150,000.00 as of January 18, 2018. (Ex. C.; Mot. ¶ 6.)

The Motion alleges that U.S. Bank holds a note and mortgage concerning the Property. (Mot. ¶ 1.) On or about August 3, 2007, the Debtor borrowed $617,500.00 from Wells Fargo Bank, N.A. (*Id.* ¶ 4.) On the same day, the Debtor executed a note evidencing indebtedness to Wells Fargo Bank, N.A. ("Note") (*see* Ex. A at 2), and the Debtor and co-mortgagor delivered a mortgage securing repayment of the Note (the "Mortgage") against the Property. The Mortgage was then assigned by Wells Fargo Bank, N.A. to U.S. Bank by a written assignment dated September 28, 2017. (*See* Ex. A at 34.) The Note shows an endorsement in blank from Wells

4

Fargo Bank, N.A. (*i.e.*, a result of the blank space between "PAY TO THE ORDER OF" and "WELLS FARGO BANK, N.A." in the endorsement). (*Id.* at 4.) As already indicated, no evidence was provided in support of the Motion that U.S. Bank holds the original Note endorsed in blank.

## II.    LEGAL STANDARDS

The Bankruptcy Code imposes an automatic stay of nearly all litigation against the debtor. 11 U.S.C. § 362(a). But a party in interest can seek relief from this automatic stay "for cause including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). Alternatively, with regards to real property, a party in interest can move to lift the automatic stay when a debtor has no equity interest in the property and the property is not necessary to reorganization of the estate. 11 U.S.C. § 362(d)(2). "Sections 362(d)(1) and (d)(2) are disjunctive. This means that the Court must lift the stay if the movant prevails under either of the two grounds." *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994) (collecting cases).

### A.    Standing to Seek Relief from the Automatic Stay

"Standing is a threshold issue for a court to resolve." *In re Idicula*, 484 B.R. 284, 288 (Bankr. S.D.N.Y. 2013) (citation omitted). "A lift stay motion cannot be brought by a stranger to the case." *In re Sterling*, 2018 WL 313085 at *3 (Bankr. S.D.N.Y. Jan. 5, 2018) (quoting *In re Escobar*, 457 B.R. 229, 236 (Bankr. S.D.N.Y. 2011)). It is well settled that under section 363(d), a request to lift the automatic stay must be made by a "party in interest." *In re Lippold*, 457 B.R. 293, 296 (Bankr. S.D.N.Y. 2011). While the term "party in interest" is not defined in the Bankruptcy Code, the Second Circuit has stated that "in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party [must] be either a creditor or a debtor."

5

*In re Mims*, 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010) (citing *In re Comcoach*, 698 F.2d 571, 573 (2d Cir. 1983)).

Section 101(10) of the Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(1)(A). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C. § 101(5)(A). Courts in this jurisdiction have made clear that a party can demonstrate a "right to payment" by showing that it holds the ability to seek the state law remedy of foreclosing on a property. *See Mims*, 438 B.R. at 56 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (finding that a mortgage foreclosure was a "right to payment" against the debtor)); *see also Escobar*, 457 B.R. at 239 (explaining that "the evidence necessary to establish standing to seek stay relief or commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable law to enforce the mortgage . . .").

"Under New York law, a plaintiff has standing to commence a mortgage foreclosure action 'where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced.'" *Lippold*, 457 B.R. at 296–97 (quoting *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d 532, 536 (2d Dep't 2011)). "While the transfer of the mortgage without the promissory note is a nullity, once a promissory note is transferred from assignor to assignee, 'the mortgage passes as an incident to the note.'" *Id.* at 297 (quoting *Silverberg*, 926 N.Y.S.2d at 537); *see also Escobar*, 457 B.R. at 240 (stating that "New York law has long recognized that the rights under a mortgage lien are beneficially

6

transferred to the assignee of a promissory note, without the execution of a written assignment of the mortgage, and even without a written assignment of the mortgage").

As this Court has explained on previous occasions, in New York, there are several ways a movant can prove it is the holder of a note. *See, e.g.*, *Idicula*, 484 B.R. at 288 (describing methods for transferring a note under New York law). A movant can "prove that [it holds the note] by providing the Court with proof of a written assignment of the Note," or "by demonstrating that [it] has physical possession of the Note endorsed over to it." *Escobar*, 457 B.R. at 240 (citation omitted); *see also Mims*, 438 B.R. at 56. Transfer of a note may be accomplished through an allonge firmly affixed to the note. *See In re Sterling*, 2018 WL 313085, at *4 (citations omitted). If a note is endorsed in blank, the movant must show that it, or the party on whose behalf it acts, has possession of the original note endorsed in blank. *See Idicula*, 484 B.R. at 287, 289.

### B.   Cause for Granting Relief from the Automatic Stay

In addition to establishing standing, to prevail on a motion to lift the automatic stay under 362(d) a movant must establish its *prima facie* case that there is cause to lift the stay. A *prima facie* case that a party lacks adequate protection under section 362(d)(1) can be satisfied by showing (i) a quantitative decline in value of a property, or (ii) that the debtor has failed to make numerous post-bankruptcy payments. *See Elmira Litho*, 174 B.R. at 902–04. A *prima facie* case under section 362(d)(2) requires a showing that the debtor has no equity in the property and that the property is not necessary to the reorganization of the estate. *See* 11 U.S.C. § 362(d)(2). If a movant fails to demonstrate its *prima facie* case, the court must deny the request to lift the stay. 3 COLLIER ON BANKRUPTCY ¶ 362.10 (16th ed. 2016). Once the creditor makes a *prima facie*

7

case, the burden shifts to the debtor on all other issues. *Elmira Litho*, 174 B.R. at 902; 3 COLLIER ON BANKRUPTCY ¶ 362.10.

Courts may find that there is adequate protection for a secured creditor where there is equity in the property, but the equity cushion must be significant. *See In re Rorie*, 98 B.R. 215, 221 (Bankr. E.D. Pa. 1989) (stating that in determining whether the equity cushion provides adequate protection, the court considers factors such as "the size of the cushion; the rate at which the cushion will be eroded; and whether periodic payments are to be made to prevent or mitigate the erosion of the cushion" and holding that an equity cushion valued at 42% of the claim is sufficient to provide adequate protection); *In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) (explaining that "an equity cushion of 20% or more constitutes adequate protection," while "an equity cushion under 11% is insufficient to provide adequate protection" ); *In re James River Assoc.*, 148 B.R. 790, 796 (E.D. Va. 1992) (holding that a 2% equity cushion is insufficient to provide adequate protection because of the deterioration of the equity cushion from accumulating interest).

To succeed on a section 362(d)(2) motion, a secured creditor must establish that the debtor has no equity in the property and that the property is not necessary for an effective reorganization. *See Elmira Litho*, 174 B.R. at 900 (collecting cases). Courts use simple arithmetic to calculate the equity in a property, subtracting the total claims from the value of the property. If the value of claims against a property exceeds the value of the property, the debtor has no equity in the property. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.07[4][a]. If the movant shows that the debtor lacks equity in the property, the debtor must then show "that there [is] a reasonable possibility of a successful reorganization within a reasonable time" and that the

8

property is "essential" to such a reorganization. *In re Timbers of Inwood Forest*, 484 U.S. 365, 375–76 (1988).

### III.    DISCUSSION

The Motion fails to establish that U.S. Bank is a "party in interest" under 11 U.S.C. 362(d) and that Rushmore has standing to enforce U.S. Bank's right to foreclose on the Property. As described above, no evidence has been offered to support that U.S. Bank holds the Note endorsed in blank. The Mortgage originally held by Wells Fargo Bank, N.A. was assigned to U.S. Bank by a written assignment dated September 28, 2017. (*See* Ex. A at 34.) However, no assignment of the Note is shown in the documents submitted in support of the Motion. Instead, the Note shows an endorsement in blank from Wells Fargo Bank, N.A. (*i.e.*, a result of the blank space between "PAY TO THE ORDER OF" and "WELLS FARGO BANK, N.A." in the endorsement). (*Id.* at 4). In addition, no affidavit or declaration (or any document submitted in support of the Motion) establishes that U.S. Bank holds the original Note endorsed in blank.

This Court has repeatedly emphasized that this fundamental error by Rushmore's counsel cannot support standing to lift the automatic stay to continue a foreclosure action. In *Mims*, for example, this Court held that Wells Fargo Bank, N.A. lacked standing to seek relief from the automatic stay because it failed to advance proof that it was the owner of a promissory note given with a mortgage, as it did not provide evidence that "the Note was physically delivered or assigned pursuant to a written agreement." 438 B.R. at 56. Likewise, in *Lippold*, this Court held that U.S. Bank failed to establish its standing to lift the automatic stay, as it failed "to provide satisfactory proof of its status as the owner or holder of the note at issue." 457 B.R. at 299. In *Idicula*, the Court once again outlined the requirements for establishing standing to foreclose on property. 484 B.R. at 287–88. There, the movant, servicing agent Select Portfolio Servicing, Inc., argued that U.S. Bank held the right to enforce a promissory note securing the property at

9

issue because the note was transferred to U.S. Bank by way of an allonge. *Id.* at 286. The Court held that the purported allonge could not support U.S. Bank's standing because the allonge was never submitted in evidence. *Id.* at 298. Moreover, U.S. Bank lacked standing because it did not establish that the note at issue, which was endorsed in blank, was physically delivered and currently possessed by U.S. Bank. *Id.* And most recently, in *Sterling*, the Court once again emphasized the standing requirement and the various methods by which to establish standing. 2018 WL 313085, at *2–3. The law on this issue is well-settled, and it is clear under this Court's precedents that the Motion fails to support the movant's standing.

The filing of the Loss Mitigation Request would, in any event, require adjournment of the lift stay motion. *See supra* note 1. But even had Rushmore established standing, and the Loss Mitigation Request not been filed, the Court has doubts whether the stay should be lifted now. The Motion does not make a *prima facie* showing under 362(d) that the Debtor does not have sufficient equity in the property to provide the secured creditor with adequate protection while Loss Mitigation is pursued. In his schedules, the Debtor estimates the value of the Property at $1,351,537. (ECF Doc. # 12 at 9.) Rushmore submitted a BPO, which is *not* competent evidence of the property's value. Rushmore's BPO by "Asset Val" estimates the fair market value of the property at $1,150,000 as of January 18, 2018. (Ex. C; Mot. ¶ 6.) The Motion alleges that the balance of the mortgage debt at the petition date was $997,660.68. Using either the Debtor's estimate of the value of the Property, or the estimate in the "Asset Val" BPO, the record raises questions whether the Debtor has a sufficient equity cushion in the Property to support denial of the Motion at least for sufficient time to allow the Debtor to pursue Loss Mitigation if properly triggered. One thing is clear; a foreclosure sale of the Property most likely would not maximize the value of the Property to the Debtor's estate.

The Motion is accordingly **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated:   May 8, 2018
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge